# EXHIBIT "A"

 WILSON ELSER

September 15, 2017    WILLIAM N. TERRELL
214-698-8060(direct)
Email: nick.terrell@wilsonelser.com

**Via Courier**

Records - Bexar County District Clerk
Paul Elizondo Tower
101 W. Nueva, Suite 217
San Antonio, TX 78205-3411

        Re:    *AV Technical Support, Inc. v. Acadia Insurance Group, South Texas Claims & Appraisal Service, Inc., Mark Massey, James Amato, and Janet Parker*, Cause No. 2017CI15058, pending in the 224th District Court, Bexar County, Texas

              Our File No. 09356.00366

Dear Clerk:

    We are requesting a complete copy of the Court's file for the referenced matter. It is our understanding that the cost for these copies will be $75.00. We will be sending a messenger to get these documents and he will provide payment.

    Please contact me if you have any questions by telephone number: 214-698-8062 or by email: cindy.gayler@wilsonelser.com. Thank you for your assistance in this matter.

                    Best regards,

                    Cindy Gayler

                    Cindy Gayler, Legal Secretary to
                    William N. Terrell
                    Texas State Bar No. 24075149

cg

cc:     Nick Terrell

       Peter Wohlers

FILED
3/14/2017 5:02 PM
Donna Kay McKinney
Bexar County District Clerk
Accepted By  Roxanne Mujica

4 CITS PPS/ 1 CIT CML/ SAC 1
W/JD

Cause No. __**2017CI15058**__

| | | |
|---|---|---|
| AV TECHNICAL SUPPORT, INC. | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| v. | § | |
| | § | |
| | § | BEXAR COUNTY, TEXAS |
| ACADIA INSURANCE GROUP, SOUTH | § | |
| TEXAS CLAIMS & APPRAISAL SERVICE, | § | |
| INC., MARK MASSEY, JAMES AMATO, | § | **224TH** |
| AND JANET PARKER | § | _____ JUDICIAL DISTRICT |

*Defendants.*

## PLAINTIFF'S AMENDED COMPLAINT

COMES NOW, Plaintiff, AV Technical Support, Inc. ("AV Technical"), and files this Original Petition against Defendants Acadia Insurance Company ("Acadia"), South Texas Claims & Appraisal Service, Inc. ("Texas Claims"), Mark Massey ("Massey"), James Amato ("Amato"), and Janet Parker ("Parker")(collectively "Defendants"), and Plaintiff would respectfully show the following:

### PARTIES

1.      Plaintiff, AV Technical, is a Texas corporation with its principal place of business at 4311 Director Dr., San Antonio, Texas 78219.

2.      Defendant Acadia Insurance Company is an insurance company that engaged in the business of insurance in the State of Texas at all times material to this action. This defendant may be served by serving its registered agent C T Corporation System, 1999 Bryan St Ste 900, Dallas Texas 75201-4284.

1

3.     Defendant South Texas Claims & Appraisal Service, Inc. is an insurance adjusting company that engaged in the business of insurance in the State of Texas at all times material to this action.  This defendant may be served by serving its registered agent Lee T. Massey, 4407 Walzem Road, Suite 101, San Antonio, Texas 78218.

4.     Defendant Massey is an individual residing in and domiciled in the State of Texas. This defendant may be served at: 709 Taylor Drive, Adkins, Texas 78101.

5.     Defendant Amato is an individual residing in and domiciled in the State of Texas. This defendant may be served at: 1917 Springbranch Drive, Arlington, Texas 76006-6613.

6.     Defendant Parker is an individual residing in and domiciled in the State of North Carolina. This defendant may be served at: 6300 Vernedale Road, Charlotte, North Carolina 28212-2122

**JURISDICTION**

7.     The Court has jurisdiction over this controversy because the damages are within the jurisdictional limits of this court.  Plaintiff is seeking monetary relief over $1,000,000.  Plaintiff reserves the right to amend this petition during and/or after the discovery process.

8.     Court has jurisdiction over Defendant, Acadia, because this defendant engaged in the business of insurance in the State of Texas, and Plaintiff's causes of action arise out of defendant's business activities in the State of Texas

9.     Court has jurisdiction over Defendant, Texas Claims, because this defendant engaged in the business of insurance in the State of Texas, and Plaintiff's causes of action arise out of defendant's business activities in the State of Texas

2

10.     The Court has jurisdiction over Defendant. Massey. because this defendant engages in the business of adjusting insurance claims in the State of Texas. and Plaintiff's causes of action arise out of defendant's business activities in the State of Texas.

11.     The Court has jurisdiction over Defendant. Amato. because this defendant engages in the business of adjusting insurance claims in the State of Texas. and Plaintiff's causes of action arise out of defendant's business activities in the State of Texas.

12.     The Court has jurisdiction over Defendant. Parker. because this defendant engages in the business of adjusting insurance claims in the State of Texas. and Plaintiff's causes of action arise out of defendant's business activities in the State of Texas

### VENUE

13.     Venue is proper in Bexar County. Texas. because the insured property is situated in Bexar County. Texas. Tex. Civ. Prac. & Rem. Code § 15.032.

### FACTS

14.     Plaintiff is the owner of a property insurance policy ("the Policy") number CPA 4697083-10 issued by Union Standard and Acadia.

15.     Plaintiff owns the insured property located at 4311 Director Dr. San Antonio. Texas 78219 (hereinafter referred to as "the Property"). Union Standard and Acadia sold the Policy insuring the Property to Plaintiff.

16.     On or about April 12. 2016. a hail storm and/or windstorm struck Bexar County. Texas. causing severe damage to homes and businesses throughout the region ("the Storm"). including the Property. The Storm damaged the Property extensively. causing damage to Plaintiff's roof and interior. Specifically. the hail caused damage to the commercial roof field and

3

roofing components, leaving dents and damage throughout, and causing corresponding water damage to the interior. The damage was so severe that Plaintiff's entire roof is in need of replacement.

17.     After the Storm, Plaintiff submitted a claim to Union Standard and Acadia for the damage the Property sustained as a result of the Storm. Plaintiff requested they cover the cost of repairs, including but not limited to, replacement of the roof pursuant to the Policy.

18.     Defendants Union Standard and Acadia assigned the loss to Texas Claims who assigned Massey as the individual adjuster ("the adjuster") on the claim. Massey failed to perform a thorough investigation of the claim, spending an inadequate amount of time inspecting Plaintiff's property. Massey conducted a substandard inspection of Plaintiff's Property evidenced by the numerous assumptions he made in his adjuster's report regarding the age, material, and condition of the roof.

19.     Massey's June 5, 2016 estimate was reported to Parker with a one-line statement that "no notable hail damaging impacts to the gravel ballasted roof membrane." He fails to indicate what "notable" means, but seems to imply that hail damage was present but he did not need to note it for whatever reason, despite having the duty to do so under the Texas Insurance Code.

20.     His estimate was sent to Parker, who together with Amato, wrongfully denied Plaintiff's claim and refused payment for otherwise obvious hail damage at Plaintiff's Property.

21.     When AV Technical pushed back against the Acadia's denial, Acadia retained an engineer who also found hail damage to parts of the roof but Acadia refused to pay for the roof replacement, citing wear and tear and the condition of the roof. Acadia and Amato did this despite knowing the AV Technical was a new owner of the Property and had provided Acadia and Amato

4

with a Property Condition Assessment that assessed the condition of the roof structure to be in the highest and best category for condition four months prior to the Storm.

22.     Amato failed to adequately explain what areas of the roof showed damage compared to those areas that did not and he misrepresented the cause of damage to Plaintiff's roof and interior by claiming the damage was caused by "wear and tear/deterioration." Then, without any further explanation, Amato denied any coverage for interior damage stating simply that "No such opening was found during our inspection" despite obvious holes in parts of the building envelope.

23.     Acadia and Texas Claims and their personnel failed to thoroughly review and properly supervise the work of their assigned adjusters, which ultimately led to the approving an improper adjustment and an inadequately unfair settlement of Plaintiff's claim. This is evident by Acadia failing to note that its own engineer found openings in the roof and hail damage of sufficient size to damage the roof, yet the damage was not estimated by Fairley or Amato. As a result of Defendants' wrongful acts and omissions set forth above and further described herein, Plaintiff was wrongfully denied on the claim and has suffered damages.

24.     Together, Defendants set about to deny and/or underpay on properly covered damages. Defendants failed to provide full coverage for the damages sustained by Plaintiff and under-scoped Plaintiff's damages, thereby denying adequate and sufficient payment on Plaintiff's claim. As a result of Defendants' unreasonable investigation, Plaintiff's claim was improperly adjusted, and Plaintiff was wrongfully denied on the claim and has suffered damages. The mishandling of Plaintiff's claim has also caused a delay in Plaintiff's ability to fully repair the

Property, which has resulted in additional damages. To this date, Plaintiff has yet to receive the full payment that it is entitled to under the Policy.

25.   As detailed in the paragraphs below, Acadia wrongfully denied Plaintiff's claim for repairs of the Property, even though the Policy provided coverage for losses such as those suffered by Plaintiff.

26.   Acadia unreasonably delayed its handling of Plaintiff's claim, taking more than 50 days make a claim determination. This exceeds the allowable time under the Texas Insurance Code, even if Federal proves itself to be an eligible surplus lines insurer. To date, Acadia continues to delay in the payment for the damages to the Property. As such, Plaintiff has not been paid in full for the damages to the Property.

27.   Defendant Acadia failed to perform its contractual duties to adequately compensate Plaintiff under the terms of the Policy. Specifically, it refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged property, and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiff. Acadia's conduct constitutes a breach of the insurance contract between Acadia and Plaintiff.

28.   Defendants misrepresented to Plaintiff that the damage to the Property was not covered under the Policy, even though its adjuster and engineer noted hail damage to the Property, which is a covered occurrence. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a)(1).

29.   Defendants failed to make an attempt to settle Plaintiff's claim in a fair manner, although they were aware of their liability to Plaintiff under the Policy. Defendants' conduct

constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.0060(a)(2)(A).

30.     Defendants failed to explain to Plaintiff the reasons for their offer of an inadequate settlement. Specifically, Defendants failed to offer Plaintiff adequate compensation, without any explanation why full payment was not being made, relying instead on vague Policy terms such as "wear and tear" and ignoring the analysis provided to them in the Property Condition Assessment. Furthermore, Defendants did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiff's claim. Defendants' conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a)(3).

31.     Defendants failed to affirm or deny coverage of Plaintiff's claim within a reasonable time. Specifically, the Texas Insurance Code provides Acadia 15 business days after it receives the information on which it will base its claim decision to inform Plaintiff whether it will accept or reject the claim. TEX. INS. CODE § 542.056(a). Plaintiff did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendants. Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. *Id.* and TEX. INS. CODE § 541.060(a)(4).

32.     Based on the foregoing, Defendants refused to fully compensate Plaintiff, under the terms of the Policy, even though Defendants failed to conduct a reasonable investigation. Specifically, Defendants performed an outcome-oriented investigation of Plaintiff's claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiff's claim on the Property,

7

Defendants' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a)(7).

33.    As detailed earlier in Paragraph 22, Defendant Acadia failed to meet its obligations under the Texas Insurance Code regarding beginning an investigation of Plaintiff's claim and requesting all information reasonably necessary to investigate Plaintiff's claim, within the statutorily mandated time of receiving notice of Plaintiff's claim. Acadia's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE § 542.055.

34.    Defendant Acadia failed to accept or deny Plaintiff's full and entire claim within the statutorily mandated time of receiving all necessary information. Specifically, Acadia failed to meet its obligations of providing the notice not later than the 15th business day. Acadia's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE § 542.056.

35.    Defendant Acadia failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay. Specifically, it has delayed full payment of Plaintiff's claim longer than allowed and, to date, Plaintiff has not received full payment for the claim. Acadia's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE § 542.058.

36.    From and after the time Plaintiff's claim was presented to Defendant Acadia, the liability of Acadia to pay the full claim in accordance with the terms of the Policy was reasonably clear. It was even noted by Amato and Acadia's engineer that there was existing hail damage to Plaintiff's roof. However, Acadia has refused to pay Plaintiff's claim in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full

8

payment. Acadia's conduct constitutes a breach of the common law duty of good faith and fair dealing.

37.     Defendants knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiff. Further to the above facts, Massey, Amato and Acadia misrepresented the cause of the interior water damage at Plaintiff's Property, falsely claiming it was the result of wear and tear/deterioration" without even alluding to which areas of the Property were being referenced. Such a vague and contradicting statement was made with the intent to deceive or conceal from Plaintiff material information. Alternatively, the statement was made without regard to whether it was true or false. And Defendants did not claim to know or state where any such maintenance failures occurred but generally stated it to be applicable to anywhere Plaintiff believed to be damaged from hail.

38.     As a result of Defendants' wrongful acts and omissions, Plaintiff was forced to retain the professional services of the attorney and law firm who are representing it with respect to these causes of action.

39.     Plaintiff's experience is not an isolated case. The acts and omissions Acadia committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Acadia with regard to handling these types of claims. Acadia's entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders.

## CAUSES OF ACTION

40.     Each of the foregoing paragraphs is incorporated by reference in the following:

9

I.    **Causes of Action Against Texas Claims and Massey**

41.    Acadia assigned Texas Claims and Massey to adjust this claim.  Massey was improperly trained and performed an outcome-oriented and unreasonable investigation of Plaintiff's damages.  Massey did not assess any of the damages caused by the Storm and omitted covered damages from the report including the full extent of damage to the roof.  Massey even underestimated the damage to the HVAC units, which fell below Plaintiff's deductible.   Massey refused to fully compensate Plaintiff for the full amount Plaintiff is entitled under the Policy.  The outcome-oriented investigation of Plaintiff's claim resulted in a biased evaluation of Plaintiff's damages to the Property and the estimated damages were severely underestimated.

A.    **Noncompliance with Texas Insurance Code:  Unfair Settlement Practices**

42.    Defendant Texas Claims and Massey's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE § 541.060(a).   All violations under this article are made actionable by TEX. INS. CODE § 541.151.

43.    Defendants Texas Claims and Massey are individually liable for his unfair and deceptive acts, irrespective of the fact Massey was acting on behalf of Texas Claims and Acadia, because Massey is a "person" as defined by TEX. INS. CODE § 541.002(2).  The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, adjuster or life and health insurance counselor."  TEX. INS. CODE § 541.002(2) (emphasis added).  (See also *Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.*, 966 S.W. 2d 482, 484 (Tex. 1998) (holding an insurance company employee to

10

be a "person" for the purpose of bringing a cause of action against him or her under the Texas Insurance Code and subjecting him or her to individual liability)).

44.     Defendants' misrepresentations by means of deceptive conduct include, but are not limited to: (1) failing to conduct a reasonable inspection and investigation of Plaintiff's damages; (2) stating that Plaintiff's damages were less severe than they in fact were; (3) using their own statements about the non-severity of the damages as a basis for denying properly covered damages and/or underpaying damages; (4) failing to provide an adequate explanation for the inadequate compensation Plaintiff received; (5) erroneously claiming covered damages were not covered; (6) erroneously claiming that interior damages were the result of something other than the hail. Defendants Texas Claims and Massey's unfair settlement practices, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060 (a)(1).

45.     Defendants Texas Claims and Massey's unfair settlement practices, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the Policy is reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(2)(A).

46.     Defendants Texas Claims and Massey failed to explain to Plaintiff the reasons for the offer or offers of an inadequate settlement. Specifically, Defendants failed to offer Plaintiff adequate compensation without any explanation as to why full payment was not being made, particularly after noting that hail damage existed to Plaintiff's roof. Furthermore, Defendant

11

Massey did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor was there any explanation for the failure as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of Plaintiff's claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(3).

47.    Defendant Texas Claims and Massey's unfair settlement practices, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff, or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(4).

48.    Defendant Texas Claims and Massey did not properly inspect the Property and failed to account for and/or undervalued Plaintiff's roof damage, although reported by Plaintiff to Acadia. Defendant Texas Claims and Massey's unfair settlement practices, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition, and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(7).

**II.    Causes of Action Against Amato and Parker**

49.    Acadia internally assigned Parker and Amato to adjust Plaintiff's claim. Both adjusters were improperly trained and performed an outcome-oriented and unreasonable investigation of Plaintiff's damages. Neither attempted to inspect the Property and just rubber-stamped Massey's estimate and the engineering report without ever looking at the Property. Amato even copied and pasted the engineer's statements into his denial letter without tying those

statements to any coverage or exclusion in the Policy.   It was reasonably clear that the damage was more than superficial and would prevent the roof from continuing to function as a barrier to entrance of the elements to the same extent as it did before the damage occurred.  Yet, Amato and Parker refused to fully compensate Plaintiff for the full amount Plaintiff is entitled under the Policy.  The outcome-oriented investigation of Plaintiff's claim resulted in a biased evaluation of Plaintiff's damages to the Property and the estimated damages were severely underestimated.

A.      **Noncompliance with Texas Insurance Code:  Unfair Settlement Practices**

50.      Defendants Amato and Parker's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices.  TEX. INS. CODE § 541.060(a).  All violations under this article are made actionable by TEX. INS. CODE § 541.151.

51.      Defendants Amato and Parker are individually liable for their unfair and deceptive acts, irrespective of the fact both were acting on behalf of Acadia, because each is a "person" as defined by TEX. INS. CODE § 541.002(2).  The term "person" is defined as "any individual, corporation, association, partnership, reciprocal or interinsurance exchange, Lloyds plan, fraternal benefit society, or other legal entity engaged in the business of insurance, including an agent, broker, adjuster or life and health insurance counselor." TEX. INS. CODE § 541.002(2) (emphasis added). (See also *Liberty Mutual Insurance Co. v. Garrison Contractors, Inc.*, 966 S.W. 2d 482, 484 (Tex. 1998) (holding an insurance company employee to be a "person" for the purpose of bringing a cause of action against him or her under the Texas Insurance Code and subjecting him or her to individual liability)).

52.      Defendants' misrepresentations by means of deceptive conduct include, but are not limited to: (1) failing to conduct a reasonable inspection and investigation of Plaintiff's damages;

13

(2) stating that Plaintiff's damages were less severe than they in fact were; (3) using their own statements about the non-severity of the damages as a basis for denying properly covered damages and/or underpaying damages; (4) failing to provide an adequate explanation for the inadequate compensation Plaintiff received; (5) erroneously claiming covered damages were not covered; (6) erroneously claiming that interior damages were the result of something other than the hail. Defendants Amato and Parker's unfair settlement practices, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060 (a)(1).

53.     Defendants Amato and Parker's unfair settlement practices, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though liability under the Policy is reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(2)(A).

54.     Defendants Amato and Parker failed to explain to Plaintiff the reasons for the offer or offers of an inadequate settlement. Specifically, Defendants failed to offer Plaintiff adequate compensation without any explanation as to why full payment was not being made, particularly after noting that hail damage existed to Plaintiff's roof. Furthermore, Defendant Amato and Parker did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor was there any explanation for the failure as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the offer of a compromise settlement of

14

Plaintiff's claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(3).

55.     Defendants Amato and Parker's unfair settlement practices, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff, or to submit a reservation of rights to Plaintiff, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(4).

56.     Defendants Amato and Parker did not properly inspect the Property and failed to account for and/or undervalued Plaintiff's roof damage, although reported by Plaintiff to Acadia. Defendants Amato and Parker's unfair settlement practices, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition, and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(7).

### III.    Causes of Action Against Acadia

57.     Acadia, as the insurers of Plaintiff's Policy, intentionally breached the contract with Plaintiff, intentionally violated the Texas Insurance Code, and intentionally breached the common law duty of good faith and fair dealing.

### A.    Breach of Contract

58.     Acadia breached the contract of insurance it had with Plaintiff. Specifically, Acadia breached the contract by its failure/and or refusal to adequately pay the claim as it is obligated to do under the terms of the Policy in question and under the laws in the State of Texas.

### B.    Noncompliance with Texas Insurance Code:  Unfair Settlement Practices

59.     Acadia's conduct constitutes multiple violations of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE § 541.060(a).  All violations under this article were made actionable by TEX. INS. CODE § 541.151.

60.     Acadia's unfair settlement practice, as described above, of misrepresenting to Plaintiff material facts relating to the coverage at issue, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE § 5410.060(a)(1).

61.     Acadia's unfair settlement practice, as described above, of failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of the claim, even though Acadia's liability under the Policy was reasonably clear, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE § 541.060(a)(2)(A).

62.     Acadia's unfair settlement practice, as described above, of failing to promptly provide Plaintiff with a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for its offer of a compromise settlement of the claim, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE § 541.060(a)(3).

63.     Acadia's unfair settlement practices, as described above, of failing within a reasonable time to affirm or deny coverage of the claim to Plaintiff, or to submit a reservation of rights to Plaintiff, constitutes an unfair method of compensation and an unfair and deceptive act or practice in the business of insurance.  TEX. INS. CODE § 541.060(a)(4).

16

64.    Acadia's unfair settlement practice, as described above, of refusing to pay Plaintiff's claim without conducting a reasonable investigation, constitutes an unfair method of competition and an unfair and deceptive act or practice in the business of insurance. TEX. INS. CODE § 541.060(a)(7).

   **C.    Noncompliance with Texas Insurance Code:   Prompt Payment of Claims Statute**

65.    Plaintiff is entitled to 18% interest and attorney fees under TEX. INS. CODE §542.060 for violating the Texas Insurance Code, Prompt Payment of claims TEX. INS. CODE §542.051 *et. seq.*

66.    Acadia failed to acknowledge receipt of Plaintiff's claim, commence investigation of the claim, and request from Plaintiff all items, statements, and forms that it reasonably believed would be required within the applicable time constraints under TEX. INS. CODE §542.055.

67.    Acadia failed to notify Plaintiff in writing of its acceptance or rejection of the claim within applicable time constraints under TEX. INS. CODE §542.056.

68.    Acadia delayed the payment of Plaintiff's claim following its receipt of all items, statements, and forms reasonably requested and required, longer than the amount of time provided for under TEX. INS. CODE §542.058.

   **D.    Breach of the Duty of Good Faith and Fair Dealing**

69.    Plaintiff incorporates the preceding paragraphs into this cause of action.  Acadia breached the duty of good faith and fair dealing by failing to adequately and reasonably investigate and evaluate Plaintiff's claim while it knew or should have known, by the exercise of reasonable diligence, that its liability was reasonably clear.

   **E.    Knowledge**

17

70.     Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code.

## DAMAGES

71.     Plaintiff would show that all of the aforementioned acts, taken together or singularly, constitute the producing causes of the damages sustained by Plaintiff.

72.     The damages caused by the hail storm and/or windstorm have not been properly addressed or repaired in the months since the storm, causing further damages to the Property, and causing undue hardship and burden to Plaintiff. These damages are a direct result of Defendants' mishandling of Plaintiff's claim in violation of the laws set forth above.

73.     For breach of contract, Plaintiff is entitled to regain the benefit of its bargain, which is the amount of its claim, together with attorney's fees.

74.     For noncompliance with the Texas Insurance Code, Unfair Settlement Practices, Plaintiff is entitled to actual damages, which include the loss of the benefits that should have been paid pursuant to the Policy, court costs, and attorney's fees. For knowing conduct of the acts described above, Plaintiff ask for three times their actual damages. TEX. INS. CODE § 541.152.

75.     For noncompliance with Texas Insurance Code, Prompt Payment of Claims, Plaintiff is entitled to the amount of the claim, as well as 18% (eighteen percent) interest per annum on the amount of such claim as damages, together with attorney's fees. TEX. INS. CODE § 542.060.

76.     For breach of the common law duty of good faith and fair dealing, Plaintiff is entitled to compensatory damages, including all forms of loss resulting from the insurer's breach of duty, such as additional costs, economic hardship, losses due to nonpayment of the amount the insurer owed, exemplary damages and damages for emotional stress.

18

77.     For the prosecution and collection of this claim. Plaintiff has been compelled to engage the services of the attorney whose name is subscribed to this pleading. Therefore. Plaintiff is entitled to recover a sum for the reasonable and necessary services of Plaintiff's attorney in the preparation and trial of this action, including any appeals to the Court of Appeals and/or the Supreme Court of Texas

## JURY DEMAND

78.     Plaintiff hereby demands a trial by jury and tender the appropriate fee.

## DISCOVERY REQUESTS

79.     Pursuant to Texas Rules of Civil Procedure 194. Plaintiff requests that each Defendant  disclose, within 30 days of service of this request, the information or materials described in Texas Rule of Civil Procedure 194.2(a)-(l).

80.     Defendants are requested to respond to the attached interrogatories and requests for production within fifty (50) days.

## PRAYER

81.     WHEREFORE. PREMISES CONSIDERED. Plaintiff prays that this court cite Defendants to appear and answer herein and that Plaintiff has judgment taken against Defendants and recovers from Defendants all damages allowed by law. and that Plaintiff be awarded attorneys' fees for trial and any appeal of this case, for pre-judgment and post judgment interest as allowed by law, costs of court, and such other and further relief, both general and special, at law or in equity, to which Plaintiff is justly entitled.

Respectfully submitted.

THE POTTS LAW FIRM, LLP

19

By:   */s/ Andrew A. Woellner*
      **Andrew A. Woellner**
      Texas Bar No.: 24060850
      3737 Buffalo Speedway, Suite 1960
      Houston, Texas 77098
      Telephone (713) 963-8881
      Facsimile (713) 583-5388
      Email:

      **ATTORNEYS FOR PLAINTIFF**

20

## PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION

COMES NOW Plaintiffs, in the above-styled and numbered cause, and requests that Defendant(s) answer the following Interrogatories and Requests for Production separately and fully in writing pursuant to the Texas Rules of Civil Procedure within 50 days of service. Serve answers to the requests on Plaintiffs by and through his/her attorney of record.

### DEFINITIONS AND INSTRUCTIONS

The following definitions and instructions shall apply to these Interrogatories and Requests for Production:

1.      "You", "your", and "defendant" shall mean the Defendant the interrogatories and requests for production are addressed to in this case, and shall include past or present directors, officers, representatives, employees, agents, guardians, attorneys, or any other person or persons acting or purporting to act on your behalf, whether authorized to do so or not.

2.      "Any" includes the word "all" and "all" includes the word "any".

3.      The term "person" or "persons" shall mean all individuals and entities, including, but not limited to, natural persons, firms, partnerships, associations, organizations, divisions, joint ventures, corporations, trusts, reciprocal or interinsurance exchange, Lloyd's plan, fraternal benefit society, agent, governmental entities, domestic or foreign, unincorporated associations, or any other form of business, governmental, public or charitable entity.

4.      Unless otherwise established by the context, the plural shall be construed to include the singular and the singular the plural, wherever the effect of doing so is to increase the information in your responses.

5.      The terms "relate to", "relating to", "refer to", and "referring to" shall be construed to include any connection, direct or indirect, whatsoever with the requested documentation, person, or subject matter, without limitation unless specifically indicated.

6.      "Identify" or give the "identity of" means:

      i.      In the case of a <u>person</u>, to state such person's
         (1)     full name;
         (2)     last known home and business address and home and business telephone number;
         (3)     employer or business affiliation; and
         (4)     occupation and business position held.

ii.      In the case of a <u>document</u>, to state:
  (1)      the identity of the person or persons preparing it and the sender;
  (2)      its title or a description of the general nature of the subject matter;
  (3)      the identity of the addressee(s), if any;
  (4)      its date or dates of preparation;
  (5)      its date or dates and manner of distribution and publication, if any;
  (6)      the location of each copy and the identity of its present custodian;
  (7)      the type of document; and
  (8)      all characteristics by which that document might be distinguished from any other document.

iii.     In the case of a communication in the form of an <u>oral statement</u>, to state:
  (1)      the identity of the person uttering the oral statement;
  (2)      the place at which such oral statement was uttered;
  (3)      the date on which such oral statement was uttered;
  (4)      the identity of each person in whose presence or hearing such oral statement was uttered; and
  (5)      the substances of the oral statement.

7.     "Evidencing" or "evidences" shall mean constituting, proving, reflecting, indicating, or probative of the existence or nature of any fact, allegation, or given matter.

8.     "Fact" refers to all evidentiary facts presently known to you and all evidentiary facts the existence of which is presently inferred by you from the existence of any combination of evidentiary and/or ultimate facts.

9.     "Policy" refers to the policy of insurance in effect on the date that the loss made the basis of this lawsuit occurred.

10.    "Property" refers to the building, dwelling, other structures, and personal property covered by the Policy, as defined above, made the basis of this lawsuit.

11.    "Lawsuit" shall mean the litigation, the style, court and cause number which is found in the caption to this instrument.

12.    "Document" shall include but not be limited to all handwritten, stenographic, typed, written, or printed writings and papers of every kind, kept, maintained, or received by plaintiff or your attorney, including, but not limited to, contracts, invoices, letters, telegrams, e-mails, memoranda, reports, studies, books, records, calendar or diary entries, pamphlets, notes, charts, tabulations, records (including tape recordings or transcriptions thereof) of meetings, conferences, and telephone or other conversations or communications, ledgers, financial statements, photostats, microfilm, photographs, slides, motion pictures, video tapes, tape and disc recordings on software programs, including reproduction of copies of documents which are not identical duplicates of the original, and also including any reproduction or copies of documents of which the originals are

not in the possession, custody or control of Defendant. This definition includes all copies, reproductions, or facsimiles of documents by whatever means made and all documents for which privilege is claimed. If copies of a document are not identical by reason of handwritten notations, identification marks, or any other modifications, each such non-identical copy is a separate document within the meaning of this definition.

11.     "Incident", "accident", and/or "occurrence", and/or "collision" shall mean and refer to that certain incident which is described in more detail in Plaintiff's Original Petition currently on file herein.

12.     A person has knowledge of relevant facts when he has or may have knowledge of any discoverable matter. The information need not be admissible and personal knowledge is not required. Identification of a person with knowledge of relevant facts should include a current address and telephone number.

13.     When responding to any of the following Interrogatories, the Defendant is to identify to the fullest extent possible, any document which the Defendant know or suspects had once existed.

Respectfully submitted,

THE POTTS LAW FIRM, LLP

By:     /s/ Andrew A. Woellner
        **Andrew A. Woellner**
        SBN: 24060850
        3737 Buffalo Speedway, Suite 1900
        Houston, Texas 77098
        Telephone (713) 963-8881
        Facsimile (713) 583-5388
        Emails: awoellner@potts-law.com

**ATTORNEYS FOR PLAINTIFF**

23

## CERTIFICATE OF SERVICE

I hereby certify that I sent a true and correct copy of the attached discovery requests to Defendant(s) as an attachment to the petition. Therefore, Defendant(s) would have received it when it was served with the citation.

THE POTTS LAW FIRM, LLP


/s/ Andrew A. Woellner
**Andrew A. Woellner**

24

## INTERROGATORIES TO ACADIA INSURANCE COMPANY

1.  Identify the name, job title, dates of employment and a brief description for all persons providing information for the answers to these interrogatories.

    **ANSWER**

2.  Identify all persons and entities who handled the claim made the basis of the Lawsuit on behalf of Defendant.

    **ANSWER**

3.  Identify the name and job title of each person who inspected the Property made the basis of this Lawsuit and the date of the inspection.

    **ANSWER**

4.  State the date Defendant closed Plaintiffs' claim and to the extent Defendant asserts statute of limitations as a defense, state all dates and manners in which Defendant notified Plaintiff(s)

    **ANSWER**

5.  Does Defendant contend that Plaintiff(s) failed to provide proper notice of the claim made the basis of this Lawsuit under the Policy or Texas Insurance Code, and, if so, describe how notice was deficient and the resulting prejudice, if any.

    **ANSWER**

6.  At the time the claim made the basis of this Lawsuit was investigated and inspected, describe all damage attributable to the storm observed at the Property by Defendant, or persons or entities on behalf of Defendant.

    **ANSWER**

7.  Please identify all documents and information requested from Plaintiff at the time the claim made the basis of this Lawsuit was investigated, stating the date and manner in which the request was made, and identify the requested documents Defendant claims Plaintiff failed to provide upon Defendant's request.

    **ANSWER**

25

8. If you contend Plaintiffs' damages claimed in this lawsuit are from a prior insurance claim or prior unrepaired damage, please list all prior claims on the property made in the last ten years, including claim number, date of loss, type of loss, and payments, if any.

    **ANSWER**

9. Describe Defendant's method of determining whether overhead and profit ("O&P") should be applied to the claim made the basis of this Lawsuit, and whether Defendant has a policy or procedure in place regarding the method of determining O&P.

    **ANSWER**

10. List all exclusions under the Policy applied to the claim made the basis of this Lawsuit, and for each exclusion identified, state the factual basis that Defendant relies upon to apply that exclusion.

    **ANSWER**

11. Identify all items on the claim made the basis of this Lawsuit that Defendant applied depreciation, stating for each item the method for calculating the depreciation and the age of the item.

    **ANSWER**

12. State whether Defendant applied depreciation to labor and removal of the roof in the claim made the basis of this lawsuit, identifying the basis for that depreciation and the applicable policy section.

    **ANSWER**

13. State whether sales tax was paid by Defendant on all materials and/or labor and the method of calculation.

    **ANSWER**

14. State the Date Defendant first anticipated litigation.

    **ANSWER**

15. State whether the estimate(s) prepared for the claim made the basis this Lawsuit by Defendant, or on Defendant's behalf, failed to identify any storm related damage at the Property. If so, identify each item of damage.

    **ANSWER**

26

16. Identify all underwriting reports in Defendant's possession or control for the Property.

   **ANSWER**

17. State whether the estimate(s) prepared for the claim made the basis of this lawsuit wrongly included or excluded any item or payment and describe each item or payment by stating whether it should have been included or excluded from the estimate.

   **ANSWER**

18. Identify the amount of attorneys' fees incurred by Defendant to date and in connection with this amount state:
   a. The activities and work performed from the inception of the representation of Defendant through Present.
   b. The amount of time spent on each of the activities performed from the inception of the representation through Present.
   c. The name and hourly rate charged by each of the attorneys representing Defendant in this case from the inception of the representation until Present; and the date in which the representation of Plaintiff began by each attorney.

   **ANSWER**

19. What is your compensation arrangement with your expert witness in this case?

   **ANSWER**

20. Describe the work performed by your expert witnesses in this case, including a description of the work, the time the work took to complete, the name of the person who completed the work, the date of the work and the rate charged or applied to the work.

   **ANSWER**

21. State every basis, in fact and based on the terms of the policy, for defendant's denial or partial denial and/or recommendation of denial or partial denial of Plaintiff's claim(s)

   **ANSWER**

22. If you contend that the Policy is void for any reason, state the factual basis for that contention.

   **ANSWER**

## REQUEST FOR PRODUCTION TO ACADIA INSURANCE COMPANY

1.      The following insurance documents issued for the Properties as identified in the Petition:

      a.      the policy at issue for the date of loss as identified in the Petition: and

      b.      the policy declarations page for the 3 years preceding the storm.

RESPONSE:


2.      Produce underwriting files and documents relating to the underwriting for all insurance policies for the Properties identified in the Petition. This request is limited to the past 3 years. To the extent Defendant contends that the underwriting file or documents older than 3 years impact the damages or coverage. produce that underwriting file or document.

RESPONSE:


3.      All documents relating to the condition or damages of the Properties or any insurance claim on the Properties identified in the Petition.

RESPONSE:


4.      All documents relating to any real property insurance claims made by Plaintiff at the insured premises that are the basis of this Lawsuit or business interruption. loss of income and/or business loss claims made by the Plaintiff(s). This request is limited to the past 3 years. To the extent Defendant contends that documents older than 3 years impact the damages or coverage. produce that document.

RESPONSE:


5.      All requests for information to any third party about the Properties. the Plaintiff(s). or the claims made the basis of this Lawsuit.

RESPONSE:


28

6.      All documents used to instruct, advise, guide, inform, educate, or assist provided to any person handling the claim made the basis of this Lawsuit that related to the adjustment of this type of claim, i.e., hail property damage, business interruption, loss of income and/or business loss.

RESPONSE:


7.      All documents obtained from any person(s) or entity(ies) and governmental agencies on behalf of Defendant or by Defendant relating to the Plaintiff(s), the Properties, the Policy, or the claims made the basis of this Lawsuit. This request includes all documents obtained by way of deposition on written questions.

RESPONSE:


8.      All documents received (prior to litigation) directly or indirectly from Plaintiff(s) or created by Plaintiff(s) related to the Properties made the basis of this Lawsuit. This request is limited to the past 5 years. To the extent Defendant contends that any document older than 5 years impact the damages or coverage, produce that document.

RESPONSE:


9.      Produce a copy of all price lists used to prepare any estimates for the claim made the basis of this Lawsuit. To the extent the pricelist is an unmodified pricelist from a third party, You can reference the vendor and version of the pricelist with a stipulation that it is unmodified.

RESPONSE:


10.     To the extent Defendant created or altered any prices used in the preparation of an estimate in the claim made the basis of this Lawsuit, produce all documents related to the creation or alteration of the price, including the original price for that item and the factual bases for the creation or alteration.

RESPONSE:

11.    A complete copy of the personnel file related to performance (excluding medical and retirement information) for all people and their managers and/or supervisors who directly handled the claim made the basis of this Lawsuit, including all documents relating to applications for employment, former and current resumes, last known address, job title, job descriptions, reviews, evaluations, and all drafts or versions of requested documents. This request is limited to the past 5 years.

RESPONSE:


12.    All organizational charts, diagrams, lists, and/or documents reflecting each department, Division or section of Defendant's company to which the claim made the basis of this Lawsuit was assigned.

RESPONSE:


13.    All Texas insurance licenses and/or certifications in effect that the time of the claims arising out of the storm made the basis of plaintiff's claim for all persons who worked on the claim made the basis of this Lawsuit, including any document relating to the application, issuance or review of those licenses and/or certifications.

RESPONSE:


14.    If an engineer and/or engineering firm evaluated the Properties, produce all reports written at the request of Defendant by that engineer or engineering firm within the last 3 years. This request is limited to the extent that the engineer and/or engineering firm was used during claims handling.

RESPONSE:


15.    Produce all documents showing amounts billed and paid to any engineer and/or engineering firm identified in response to Request for Production No. 14 above within the last 3 years. A summary is acceptable in lieu of actual invoices or payments.

RESPONSE:

16.    All documents reflecting the pre-anticipation of litigation reserve(s) set on the claim made the basis of this Lawsuit, including any changes to the reserve(s) along with any supporting documentation.

RESPONSE:


17.    All documents relating to issues of honesty, criminal actions, past criminal record, criminal conduct, fraud investigation and/or inappropriate behavior which resulted in disciplinary action by Defendant of any person(s) or entity(ies) who handled the claim made the basis of this Lawsuit, the Plaintiff(s) or any person assisting on the claim made the basis of this Lawsuit.

RESPONSE:


18.    All documents relating to work performance, claims patterns, claims problems, commendations, claims trends, claims recognitions, and/or concerns for any person who handled the claim made the basis of this Lawsuit.

RESPONSE:


19.    All XactAnalysis reports that include this claim in any way, this Policy, the amount paid on this Policy and/or referencing any person who handled the claim made the basis of this Lawsuit.

RESPONSE:


20.    Any email or document that transmits, discusses, or analyzes any report produced in response to Request for Production No. 19 above.

RESPONSE:


21.    All Simsol Management reports that include this claim in any way, this Policy, the amount paid on this Policy and/or referencing any person who handled the claim made the basis of this Lawsuit.

RESPONSE:

31

22.     Any email or document that transmits, discusses, or analyzes any report produced in response to Request for Production No. 21 above.

RESPONSE:


23.     For any consulting expert whose mental impressions or opinions have been reviewed by a testifying expert, all documents or tangible things that have been provided to, reviewed by, or prepared for any testifying expert.

RESPONSE:


24.     Pursuant to Texas Rule of Evidence 609(1), provide all documents evidencing conviction of a crime which You intend to use as evidence to impeach any party or witness.

RESPONSE:


25      All indemnity agreements in effect at the time of Plaintiffs' claim between Defendant and any person(s) and/or entity(ies) who handled the claim made the basis of the Lawsuit.

RESPONSE:


26.     All contracts in effect at the time of Plaintiffs' claim between Defendant and any person(s) and/or entity(ies) who handled the claim made the basis of the Lawsuit.

RESPONSE:


27.     All confidentiality agreements and/or instructions regarding confidentiality in effect at the time of Plaintiffs' claim between Defendant and any person(s) and/or entity(ies) who the claim made the basis of the Lawsuit.

RESPONSE:


32

28.    All documents between Defendant and any person(s) and/or entity(ies) who handled the claim made the basis of the Lawsuit regarding document retention policy in effect at the time of Plaintiffs' claim.

RESPONSE:

29.    To the extent the claim involves rescinding of the policy, all documents regarding Defendant's standards for investigating and rescinding and/or voiding a policy.

RESPONSE:

30.    If a claim for business interruption, loss or income and/or business loss is asserted, all documents used to instruct, advise, guide, inform, educate, or assist provided to any person or defendant(s) in calculating and/or evaluating any extra expenses incurred during the period of business interruption loss of income and/or business loss covered under Plaintiff's policy. This request is limited to the last 3 years.

RESPONSE:

31.    If a claim for business interruption, loss of income and/or business loss is asserted, all documents prepared by any third party used to evaluate Plaintiffs' claim(s) regarding, in any way, the investigation of business interruption, loss of income and/or business loss claims.

RESPONSE:

32.    All claims handling manuals and/or guidelines that were in effect during Charter Oak's investigation of Plaintiffs' claim. This request is limited to manuals or guidelines related to wind/hail claims, First Party claims, and/or structural business claims.

RESPONSE:

33

## INTERROGATORIES TO DEFENDANT TEXAS CLAIMS & APPRAISAL SERVICE, INC.

1.     Identify all email accounts, email addresses, and/or any alias or code used to identify You and used for any communication relating to Your work handling hail and/or windstorm claims arising out of the storm at issue. This request is limited only to the carrier of the claim that is the subject of this Lawsuit.

RESPONSE:

2.     Identify generally the experience You had in adjusting hail and/or windstorm damage and any specific training You had for this storm prior to Your handling of claim made the basis of this Lawsuit.

RESPONSE:

4.     Explain how You are compensated and by whom for Your work on claims arising out of the storm at issue in this Lawsuit, stating the amount You were compensated per claim, per day, and/or per week and identifying any bonus or incentive plans. To the extent the produced personnel file includes a compensation schedule, You may refer to such personnel file.

RESPONSE:

5.     Identify the following dates:

   a.     The date You first obtained an adjuster license in the State of Texas;

   b.     The first date You were hired/retained by the insurance company defendant or any other defendant in this Lawsuit to adjust property damage claims;

   c.     The date You were first assigned to handle claims arising from the storm at issue in this Lawsuit:

   d.     The date You closed Your file on the claim made the basis of this Lawsuit: and

RESPONSE:

34

6.   Describe in detail each inspection You conducted of the Properties made the basis of this Lawsuit, identifying:

   a.   The name and job title of any person who inspected the Properties for You;

   b.   The date of each inspection;

   c.   The purpose of each inspection;

   d.   The length of time of each inspection;

   e.   The equipment or tools used during each inspection;

   f.   The areas of the Properties inspected (i.e. roof, attic, individual rooms, exterior); and

   g.   Any documents generated during or as a result of each inspection, including the persons and/or entities in possession of those documents.

RESPONSE:


7.   Following the inspection(s), did You engage in any additional communications (e.g., telephone, in person, written communication) with Plaintiff? If yes, provide the following information:

   a.   the date of such communication(s);

   b.   the manner of such communication(s);

   c.   the person to whom You communicated;

   d.   the reason for the communication(s);

   e.   for any telephonic communication(s), identify who initiated the phone call, and the telephone number from which You called or on which You received the call; and

   f.   the general substance of the communication.

RESPONSE:

35

8.      Identify and describe all damage You observed during Your inspection(s) of the claim made the basis of this Lawsuit. To the extent the damage You observed during Your inspection is reflected in scope notes and photographs, You can refer Plaintiff to such scope notes and/or photographs.

RESPONSE:

9.      For all damage observed at the Properties or reflected in Your scope notes and/or photographs, state what Your believe to be the cause of the damage, describing the investigatory steps You took to determine the cause, and identify all person(s) and/or entity(ies) that provided information or participated in that determination.

RESPONSE:

10.     To the extent You applied or recommended policy exclusions, identify all exclusions under the Policy applied to the claim made the basis of this Lawsuit, and for each exclusion applied or recommended, state the factual reason(s) that the exclusion was applied or recommended.

RESPONSE:

11.     Identify the information You used to determine and how You calculated the amount of depreciation that You applied to any damage categories included in any estimates You prepared and/or approved on the claim made the basis of this Lawsuit.

RESPONSE:

12.     How did You determine whether You would or would not apply overhead and profit (O&P) to Plaintiff's claim?

RESPONSE:

13.     Identify all documents that You relied upon in the adjustment of the claim made the basis of this Lawsuit. For each document, identify who provided the document.

RESPONSE:

36

14.     Identify all documents or information You requested from Plaintiff during the investigation of the claim made the basis of this Lawsuit, the date the request was made, the person who communicated the request, and the agent and/or employee of Plaintiff who received the request.

RESPONSE:


15.     Identify all documents or items in Your possession related to the claim made the basis of this Lawsuit that You did not submit to the insurance company and/or adjusting company assigned to this claim.

RESPONSE:


16.     To the extent You are aware, identify all documents or items that were altered, revised, changed or removed from the documents or information You provided the insurance company or adjusting company relating to the claim made the basis of this Lawsuit.

RESPONSE:


17.     Identify and describe any training, guidance or instruction provided to You by any person and/or entity regarding the handling of claims arising out of the storm at issue in this Lawsuit.

RESPONSE:

## REQUESTS FOR PRODUCTION TO DEFENDANT TEXAS CLAIMS & APPRAISAL SERVICE, INC.

1.  All documents related to Plaintiffs, the Properties, the Policy, and/or the claim made the basis of this Lawsuit.

RESPONSE:

2.  All licenses or certifications that are identified in response to Interrogatory Number 3.

RESPONSE:

3.  All training documents You have for adjusting hail and/or windstorm claims. This request is limited to the past 2 years.

RESPONSE:

4.  All applications You submitted (or submitted on Your behalf) for purposes of obtaining a license to adjust claims in the State of Texas that were in effect at the time you investigated Plaintiff's claim.

RESPONSE:

5.  All resumes for the last 5 years.

RESPONSE:

6.  All applications for employment You submitted for purposes of obtaining employment as an adjuster and/or claims handler in the State of Texas. This request is limited to the 5 years preceding the date of loss at issue in this Lawsuit.

RESPONSE:

38

7.     All documents You relied upon in the adjustment of the claim made the basis of this Lawsuit.

RESPONSE:

8.     To the extent You made a determination or recommendation regarding depreciation, all documents relating to the application of depreciation on a commercial property claim in the State of Texas for the past 2 years.

RESPONSE:

9.     To the extent You made a determination or recommendation regarding overhead and profit, all documents relating to the application of overhead and profit on a commercial property claim in the State of Texas for the past 2 years.

RESPONSE:

10.    All documents or items in Your possession related to the claim made the basis of this Lawsuit that You did not submit to the insurance company and/or adjusting company assigned to this claim.

RESPONSE:

11.    All documents meant to instruct, advise, or guide the handling or adjusting hail and/or windstorm claims in the State of Texas for the last 2 years.

RESPONSE:

12.    All training manuals in effect at the time of Plaintiffs' claim used for software programs utilized in the claim made the basis of this Lawsuit.

RESPONSE:

39

13.    All documents relating to any performance reviews or evaluations by the carrier of the underlying claim, whether formal or informal, regarding Your handling of claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


14.    All documents relating to any Texas Department of Insurance complaints made against You by an insured related to claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


15.    All contracts, indemnity agreements, and/or confidentiality agreements between You and the adjusting company and/or insurance company in effect during the handling of claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


16.    All price lists used by You in handling claims arising out of the storm at issue in this Lawsuit. To the extent the pricelist is an unmodified pricelist from a third party, You can reference the vendor and version of the pricelist with a stipulation that it is unmodified.

RESPONSE:


17.    All weather reports regarding wind and/or hail relied upon by You in handling claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


18.    All correspondence to or from the adjusting company and/or the insurance company that issued the policy regarding modifying/modifications to the unit price cost and the price list You used in handling Plaintiffs' claim.

RESPONSE:


-40-

19.     If a claim for business interruption, loss of income and/or business loss is asserted, all documents used to instruct, advise, guide, inform, educate, or assist provided to any person or defendant(s) in calculating and/or evaluating business interruption, loss of income and/or business loss damages covered under Plaintiffs' policy. This request is limited to the last 3 years.

RESPONSE:


20.     If a claim for business interruption, loss of income and/or business loss is asserted, all documents used to instruct, advise, guide, inform, educate, or assist provided to any person or defendant(s) in calculating and/or evaluating any extra expenses incurred during the period of business interruption, loss of income and/or business loss covered under Plaintiff's policy. This request is limited to the last 3 years.

RESPONSE:


21.     If a claim for business interruption, loss of income and/or business loss is asserted, all documents prepared by any third party used to evaluate Plaintiffs' claim(s) in the last 3 years regarding, in any way, the investigation of business interruption, loss of income and/or business loss claims.

RESPONSE:

41

## INTERROGATORIES TO DEFENDANT MARK MASSEY

1.      Identify all email accounts, email addresses, and/or any alias or code used to identify You and used for any communication relating to Your work handling hail and/or windstorm claims arising out of the storm at issue. This request is limited only to the carrier of the claim that is the subject of this Lawsuit.

RESPONSE:

2.      Identify generally the training or experience You had in adjusting hail and/or windstorm damage and any specific training You had for this storm prior to Your handling of claim made the basis of this Lawsuit.

RESPONSE:

3.      Identify any degrees, Texas insurance licenses (unless You qualified for adjusting claims in Texas on an emergency basis, then list any insurance licenses You held from other states) or certifications You had at the time You handled the claim made the basis of this Lawsuit.

RESPONSE:

4.      Explain how You are compensated and by whom for Your work on claims arising out of the storm at issue in this Lawsuit, stating the amount You were compensated per claim, per day, and/or per week and identifying any bonus or incentive plans. To the extent the produced personnel file includes a compensation schedule, You may refer to such personnel file.

RESPONSE:

5.      Identify the following dates:

a.      The date You first obtained an adjuster license in the State of Texas;

b.      The first date You were hired/retained by the insurance company defendant or any other defendant in this Lawsuit to adjust property damage claims;

c.      The date You were first assigned to handle claims arising from the storm at issue in this Lawsuit;

d.      The date You closed Your file on the claim made the basis of this Lawsuit; and

RESPONSE:

42

6.      Describe in detail each inspection You conducted of the Properties made the basis of this Lawsuit. identifying:

a.      The name and job title of any person who inspected the Properties with You:

b.      The date of each inspection:

c.      The purpose of each inspection:

d.      The length of time of each inspection:

e.      The equipment or tools used during each inspection:

f.      The areas of the Properties inspected (i.e. roof, attic, individual rooms, exterior): and

g.      Any documents generated during or as a result of each inspection, including the persons and/or entities in possession of those documents.

RESPONSE:


7.      Following the inspection(s), did You engage in any additional communications (e.g., telephone, in person, written communication) with Plaintiff? If yes, provide the following information:

a.      the date of such communication(s):

b.      the manner of such communication(s):

c.      the person to whom You communicated:

d.      the reason for the communication(s):

e.      for any telephonic communication(s), identify who initiated the phone call, and the telephone number from which You called or on which You received the call: and

f.      the general substance of the communication.

RESPONSE:

43

8.      Identify and describe all damage You observed during Your inspection(s) of the claim made the basis of this Lawsuit. To the extent the damage You observed during Your inspection is reflected in scope notes and photographs. You can refer Plaintiff to such scope notes and/or photographs.

RESPONSE:


9.      For all damage observed at the Properties or reflected in Your scope notes and/or photographs. state what Your believe to be the cause of the damage, describing the investigatory steps You took to determine the cause, and identify all person(s) and/or entity(ies) that provided information or participated in that determination.


RESPONSE:


10.     To the extent You applied or recommended policy exclusions, identify all exclusions under the Policy applied to the claim made the basis of this Lawsuit, and for each exclusion applied or recommended, state the factual reason(s) that the exclusion was applied or recommended.

RESPONSE:


11.     Identify the information You used to determine and how You calculated the amount of depreciation that You applied to any damage categories included in any estimates You prepared and/or approved on the claim made the basis of this Lawsuit.

RESPONSE:


12.     How did You determine whether You would or would not apply overhead and profit (O&P) to Plaintiff's claim?

RESPONSE:


13.     Identify all documents that You relied upon in the adjustment of the claim made the basis of this Lawsuit. For each document, identify who provided the document.

RESPONSE:

44

14.     Identify all documents or information You requested from Plaintiff during the investigation of the claim made the basis of this Lawsuit, the date the request was made, the person who communicated the request, and the agent and/or employee of Plaintiff who received the request.

RESPONSE:


15.     Identify all documents or items in Your possession related to the claim made the basis of this Lawsuit that You did not submit to the insurance company and/or adjusting company assigned to this claim.

RESPONSE:


16.     To the extent You are aware, identify all documents or items that were altered, revised, changed or removed from the documents or information You provided the insurance company or adjusting company relating to the claim made the basis of this Lawsuit.

RESPONSE:


17.     Identify and describe any training, guidance or instruction provided to You by any person and/or entity regarding the handling of claims arising out of the storm at issue in this Lawsuit.

RESPONSE:

45

## REQUESTS FOR PRODUCTION TO DEFENDANT MARK MASSEY

1.      All documents related to Plaintiffs, the Properties, the Policy, and/or the claim made the basis of this Lawsuit.

RESPONSE:


2.      All licenses or certifications that are identified in response to Interrogatory Number 3.

RESPONSE:


3.      All training documents You have for adjusting hail and/or windstorm claims. This request is limited to the past 2 years.

RESPONSE:


4.      All applications You submitted (or submitted on Your behalf) for purposes of obtaining a license to adjust claims in the State of Texas that were in effect at the time you investigated Plaintiff's claim.

RESPONSE:


5.      All resumes for the last 5 years.

RESPONSE:


6.      All applications for employment You submitted for purposes of obtaining employment as an adjuster and/or claims handler in the State of Texas. This request is limited to the 5 years preceding the date of loss at issue in this Lawsuit.

RESPONSE:

7.      All documents You relied upon in the adjustment of the claim made the basis of this Lawsuit.

RESPONSE:


8.      To the extent You made a determination or recommendation regarding depreciation, all documents relating to the application of depreciation on a commercial property claim in the State of Texas for the past 2 years.

RESPONSE:


9.      To the extent You made a determination or recommendation regarding overhead and profit, all documents relating to the application of overhead and profit on a commercial property claim in the State of Texas for the past 2 years.

RESPONSE:


10.     All documents or items in Your possession related to the claim made the basis of this Lawsuit that You did not submit to the insurance company and/or adjusting company assigned to this claim.

RESPONSE:


11.     All documents meant to instruct, advise, or guide the handling or adjusting hail and/or windstorm claims in the State of Texas for the last 2 years.

RESPONSE:


12.     All training manuals in effect at the time of Plaintiffs' claim used for software programs utilized in the claim made the basis of this Lawsuit.

RESPONSE:

13.     All documents relating to any performance reviews or evaluations by the carrier of the underlying claim, whether formal or informal, regarding Your handling of claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


14.     All documents relating to any Texas Department of Insurance complaints made against You by an insured related to claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


15.     All contracts, indemnity agreements, and/or confidentiality agreements between You and the adjusting company and/or insurance company in effect during the handling of claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


16.     All price lists used by You in handling claims arising out of the storm at issue in this Lawsuit. To the extent the pricelist is an unmodified pricelist from a third party, You can reference the vendor and version of the pricelist with a stipulation that it is unmodified.

RESPONSE:


17.     All weather reports regarding wind and/or hail relied upon by You in handling claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


18.     All correspondence to or from the adjusting company and/or the insurance company that issued the policy regarding modifying/modifications to the unit price cost and the price list You used in handling Plaintiffs' claim.

RESPONSE:


48

19.     If a claim for business interruption. loss of income and/or business loss is asserted. all documents used to instruct. advise. guide. inform. educate. or assist provided to any person or defendant(s) in calculating and/or evaluating business interruption. loss of income and/or business loss damages covered under Plaintiffs' policy. This request is limited to the last 3 years.

RESPONSE:


20.     If a claim for business interruption. loss of income and/or business loss is asserted. all documents used to instruct. advise. guide. inform. educate. or assist provided to any person or defendant(s) in calculating and/or evaluating any extra expenses incurred during the period of business interruption. loss of income and/or business loss covered under Plaintiff's policy. This request is limited to the last 3 years.

RESPONSE:


21.     If a claim for business interruption. loss of income and/or business loss is asserted. all documents prepared by any third party used to evaluate Plaintiffs' claim(s) in the last 3 years regarding. in any way. the investigation of business interruption. loss of income and/or business loss claims.

RESPONSE:

49

## INTERROGATORIES TO DEFENDANT JANET PARKER

1.      Identify all email accounts, email addresses, and/or any alias or code used to identify You and used for any communication relating to Your work handling hail and/or windstorm claims arising out of the storm at issue. This request is limited only to the carrier of the claim that is the subject of this Lawsuit.

RESPONSE:

2.      Identify generally the training or experience You had in adjusting hail and/or windstorm damage and any specific training You had for this storm prior to Your handling of claim made the basis of this Lawsuit.

RESPONSE:

3.      Identify any degrees, Texas insurance licenses (unless You qualified for adjusting claims in Texas on an emergency basis, then list any insurance licenses You held from other states) or certifications You had at the time You handled the claim made the basis of this Lawsuit.

RESPONSE:

4.      Explain how You are compensated and by whom for Your work on claims arising out of the storm at issue in this Lawsuit, stating the amount You were compensated per claim, per day, and/or per week and identifying any bonus or incentive plans. To the extent the produced personnel file includes a compensation schedule, You may refer to such personnel file.

RESPONSE:

5.      Identify the following dates:

a.      The date You first obtained an adjuster license in the State of Texas;

b.      The first date You were hired/retained by the insurance company defendant or any other defendant in this Lawsuit to adjust property damage claims;

c.      The date You were first assigned to handle claims arising from the storm at issue in this Lawsuit;

d.      The date You closed Your file on the claim made the basis of this Lawsuit; and

RESPONSE:

6.     Describe in detail each inspection You conducted of the Properties made the basis of this Lawsuit, identifying:

a.     The name and job title of any person who inspected the Properties with You;

b.     The date of each inspection;

c.     The purpose of each inspection;

d.     The length of time of each inspection;

e.     The equipment or tools used during each inspection;

f.     The areas of the Properties inspected (i.e. roof, attic, individual rooms, exterior); and

g.     Any documents generated during or as a result of each inspection, including the persons and/or entities in possession of those documents.

RESPONSE:


7.     Following the inspection(s), did You engage in any additional communications (e.g., telephone, in person, written communication) with Plaintiff? If yes, provide the following information:

a.     the date of such communication(s);

b.     the manner of such communication(s);

c.     the person to whom You communicated;

d.     the reason for the communication(s);

e.     for any telephonic communication(s), identify who initiated the phone call, and the telephone number from which You called or on which You received the call; and

f.     the general substance of the communication.

RESPONSE:


51

8.    Identify and describe all damage You observed during Your inspection(s) of the claim made the basis of this Lawsuit. To the extent the damage You observed during Your inspection is reflected in scope notes and photographs. You can refer Plaintiff to such scope notes and/or photographs.

RESPONSE:


9.    For all damage observed at the Properties or reflected in Your scope notes and/or photographs, state what Your believe to be the cause of the damage, describing the investigatory steps You took to determine the cause, and identify all person(s) and/or entity(ies) that provided information or participated in that determination.

RESPONSE:


10.    To the extent You applied or recommended policy exclusions, identify all exclusions under the Policy applied to the claim made the basis of this Lawsuit, and for each exclusion applied or recommended, state the factual reason(s) that the exclusion was applied or recommended.

RESPONSE:


11.    Identify the information You used to determine and how You calculated the amount of depreciation that You applied to any damage categories included in any estimates You prepared and/or approved on the claim made the basis of this Lawsuit.

RESPONSE:


12.    How did You determine whether You would or would not apply overhead and profit (O&P) to Plaintiff's claim?

RESPONSE:


13.    Identify all documents that You relied upon in the adjustment of the claim made the basis of this Lawsuit. For each document, identify who provided the document.

RESPONSE:

52

14.     Identify all documents or information You requested from Plaintiff during the investigation of the claim made the basis of this Lawsuit. the date the request was made. the person who communicated the request. and the agent and/or employee of Plaintiff who received the request.

RESPONSE:


15.     Identify all documents or items in Your possession related to the claim made the basis of this Lawsuit that You did not submit to the insurance company and/or adjusting company assigned to this claim.

RESPONSE:


16.     To the extent You are aware. identify all documents or items that were altered. revised, changed or removed from the documents or information You provided the insurance company or adjusting company relating to the claim made the basis of this Lawsuit.

RESPONSE:


17.     Identify and describe any training. guidance or instruction provided to You by any person and/or entity regarding the handling of claims arising out of the storm at issue in this Lawsuit.

RESPONSE:

53

## REQUESTS FOR PRODUCTION TO DEFENDANT JANET PARKER

1.      All documents related to Plaintiffs, the Properties, the Policy, and/or the claim made the basis of this Lawsuit.

RESPONSE:


2.      All licenses or certifications that are identified in response to Interrogatory Number 3.

RESPONSE:


3.      All training documents You have for adjusting hail and/or windstorm claims. This request is limited to the past 2 years.

RESPONSE:


4.      All applications You submitted (or submitted on Your behalf) for purposes of obtaining a license to adjust claims in the State of Texas that were in effect at the time you investigated Plaintiff's claim.

RESPONSE:


5.      All resumes for the last 5 years.

RESPONSE:


6.      All applications for employment You submitted for purposes of obtaining employment as an adjuster and/or claims handler in the State of Texas. This request is limited to the 5 years preceding the date of loss at issue in this Lawsuit.

RESPONSE:

7.     All documents You relied upon in the adjustment of the claim made the basis of this Lawsuit.

RESPONSE:


8.     To the extent You made a determination or recommendation regarding depreciation, all documents relating to the application of depreciation on a commercial property claim in the State of Texas for the past 2 years.

RESPONSE:


9.     To the extent You made a determination or recommendation regarding overhead and profit, all documents relating to the application of overhead and profit on a commercial property claim in the State of Texas for the past 2 years.

RESPONSE:


10.     All documents or items in Your possession related to the claim made the basis of this Lawsuit that You did not submit to the insurance company and/or adjusting company assigned to this claim.

RESPONSE:


11.     All documents meant to instruct, advise, or guide the handling or adjusting hail and/or windstorm claims in the State of Texas for the last 2 years.

RESPONSE:


12.     All training manuals in effect at the time of Plaintiffs' claim used for software programs utilized in the claim made the basis of this Lawsuit.

RESPONSE:


55

13.     All documents relating to any performance reviews or evaluations by the carrier of the underlying claim, whether formal or informal, regarding Your handling of claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


14.     All documents relating to any Texas Department of Insurance complaints made against You by an insured related to claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


15.     All contracts, indemnity agreements, and/or confidentiality agreements between You and the adjusting company and/or insurance company in effect during the handling of claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


16.     All price lists used by You in handling claims arising out of the storm at issue in this Lawsuit. To the extent the pricelist is an unmodified pricelist from a third party. You can reference the vendor and version of the pricelist with a stipulation that it is unmodified.

RESPONSE:


17.     All weather reports regarding wind and/or hail relied upon by You in handling claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


18.     All correspondence to or from the adjusting company and/or the insurance company that issued the policy regarding modifying/modifications to the unit price cost and the price list You used in handling Plaintiffs' claim.

RESPONSE:

19.     If a claim for business interruption. loss of income and/or business loss is asserted. all documents used to instruct. advise. guide. inform. educate. or assist provided to any person or defendant(s) in calculating and/or evaluating business interruption. loss of income and/or business loss damages covered under Plaintiffs' policy. This request is limited to the last 3 years.

RESPONSE:


20.     If a claim for business interruption. loss of income and/or business loss is asserted. all documents used to instruct. advise. guide. inform. educate. or assist provided to any person or defendant(s) in calculating and/or evaluating any extra expenses incurred during the period of business interruption. loss of income and/or business loss covered under Plaintiff's policy. This request is limited to the last 3 years.

RESPONSE:


21.ᐟ   If a claim for business interruption. loss of income and/or business loss is asserted. all documents prepared by any third party used to evaluate Plaintiffs' claim(s) in the last 3 years regarding. in any way. the investigation of business interruption. loss of income and/or business loss claims.

RESPONSE:

## INTERROGATORIES TO DEFENDANT JAMES AMATO

1.      Identify all email accounts, email addresses, and/or any alias or code used to identify You and used for any communication relating to Your work handling hail and/or windstorm claims arising out of the storm at issue. This request is limited only to the carrier of the claim that is the subject of this Lawsuit.

RESPONSE:

2.      Identify generally the training or experience You had in adjusting hail and/or windstorm damage and any specific training You had for this storm prior to Your handling of claim made the basis of this Lawsuit.

RESPONSE:

3.      Identify any degrees, Texas insurance licenses (unless You qualified for adjusting claims in Texas on an emergency basis, then list any insurance licenses You held from other states) or certifications You had at the time You handled the claim made the basis of this Lawsuit.

RESPONSE:

4.      Explain how You are compensated and by whom for Your work on claims arising out of the storm at issue in this Lawsuit, stating the amount You were compensated per claim, per day, and/or per week and identifying any bonus or incentive plans. To the extent the produced personnel file includes a compensation schedule, You may refer to such personnel file.

RESPONSE:

5.      Identify the following dates:

a.      The date You first obtained an adjuster license in the State of Texas;

b.      The first date You were hired/retained by the insurance company defendant or any other defendant in this Lawsuit to adjust property damage claims;

c.      The date You were first assigned to handle claims arising from the storm at issue in this Lawsuit;

d.      The date You closed Your file on the claim made the basis of this Lawsuit; and

RESPONSE:

58

6.     Describe in detail each inspection You conducted of the Properties made the basis of this Lawsuit, identifying:

a.     The name and job title of any person who inspected the Properties with You;

b.     The date of each inspection;

c.     The purpose of each inspection;

d.     The length of time of each inspection;

e.     The equipment or tools used during each inspection;

f.     The areas of the Properties inspected (i.e. roof, attic, individual rooms, exterior); and

g.     Any documents generated during or as a result of each inspection, including the persons and/or entities in possession of those documents.

RESPONSE:


7.     Following the inspection(s), did You engage in any additional communications (e.g., telephone, in person, written communication) with Plaintiff? If yes, provide the following information:

a.     the date of such communication(s);

b.     the manner of such communication(s);

c.     the person to whom You communicated;

d.     the reason for the communication(s);

e.     for any telephonic communication(s), identify who initiated the phone call, and the telephone number from which You called or on which You received the call; and

f.     the general substance of the communication.

RESPONSE:

59

8.     Identify and describe all damage You observed during Your inspection(s) of the claim made the basis of this Lawsuit. To the extent the damage You observed during Your inspection is reflected in scope notes and photographs, You can refer Plaintiff to such scope notes and/or photographs.

RESPONSE:

9.     For all damage observed at the Properties or reflected in Your scope notes and/or photographs, state what Your believe to be the cause of the damage, describing the investigatory steps You took to determine the cause, and identify all person(s) and/or entity(ies) that provided information or participated in that determination.

RESPONSE:

10.     To the extent You applied or recommended policy exclusions, identify all exclusions under the Policy applied to the claim made the basis of this Lawsuit, and for each exclusion applied or recommended, state the factual reason(s) that the exclusion was applied or recommended.

RESPONSE:

11.     Identify the information You used to determine and how You calculated the amount of depreciation that You applied to any damage categories included in any estimates You prepared and/or approved on the claim made the basis of this Lawsuit.

RESPONSE:

12.     How did You determine whether You would or would not apply overhead and profit (O&P) to Plaintiff's claim?

RESPONSE:

13.     Identify all documents that You relied upon in the adjustment of the claim made the basis of this Lawsuit. For each document, identify who provided the document.

RESPONSE:

14.    Identify all documents or information You requested from Plaintiff during the investigation of the claim made the basis of this Lawsuit, the date the request was made, the person who communicated the request, and the agent and/or employee of Plaintiff who received the request.

RESPONSE:


15.    Identify all documents or items in Your possession related to the claim made the basis of this Lawsuit that You did not submit to the insurance company and/or adjusting company assigned to this claim.

RESPONSE:


16.    To the extent You are aware, identify all documents or items that were altered, revised, changed or removed from the documents or information You provided the insurance company or adjusting company relating to the claim made the basis of this Lawsuit.

RESPONSE:


17.    Identify and describe any training, guidance or instruction provided to You by any person and/or entity regarding the handling of claims arising out of the storm at issue in this Lawsuit.

RESPONSE:

## REQUESTS FOR PRODUCTION TO DEFENDANT JAMES AMATO

1.      All documents related to Plaintiffs, the Properties, the Policy, and/or the claim made the basis of this Lawsuit.

RESPONSE:


2.      All licenses or certifications that are identified in response to Interrogatory Number 3.

RESPONSE:


3.      All training documents You have for adjusting hail and/or windstorm claims. This request is limited to the past 2 years.

RESPONSE:


4.      All applications You submitted (or submitted on Your behalf) for purposes of obtaining a license to adjust claims in the State of Texas that were in effect at the time you investigated Plaintiff's claim.

RESPONSE:


5.      All resumes for the last 5 years.

RESPONSE:


6.      All applications for employment You submitted for purposes of obtaining employment as an adjuster and/or claims handler in the State of Texas. This request is limited to the 5 years preceding the date of loss at issue in this Lawsuit.

RESPONSE:

7.      All documents You relied upon in the adjustment of the claim made the basis of this Lawsuit.

RESPONSE:


8.      To the extent You made a determination or recommendation regarding depreciation, all documents relating to the application of depreciation on a commercial property claim in the State of Texas for the past 2 years.

RESPONSE:


9.      To the extent You made a determination or recommendation regarding overhead and profit, all documents relating to the application of overhead and profit on a commercial property claim in the State of Texas for the past 2 years.

RESPONSE:


10.     All documents or items in Your possession related to the claim made the basis of this Lawsuit that You did not submit to the insurance company and/or adjusting company assigned to this claim.

RESPONSE:


11.     All documents meant to instruct, advise, or guide the handling or adjusting hail and/or windstorm claims in the State of Texas for the last 2 years.

RESPONSE:


12.     All training manuals in effect at the time of Plaintiffs' claim used for software programs utilized in the claim made the basis of this Lawsuit.

RESPONSE:

63

13.    All documents relating to any performance reviews or evaluations by the carrier of the underlying claim, whether formal or informal, regarding Your handling of claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


14.    All documents relating to any Texas Department of Insurance complaints made against You by an insured related to claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


15.    All contracts, indemnity agreements, and/or confidentiality agreements between You and the adjusting company and/or insurance company in effect during the handling of claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


16.    All price lists used by You in handling claims arising out of the storm at issue in this Lawsuit. To the extent the pricelist is an unmodified pricelist from a third party, You can reference the vendor and version of the pricelist with a stipulation that it is unmodified.

RESPONSE:


17.    All weather reports regarding wind and/or hail relied upon by You in handling claims arising out of the storm at issue in this Lawsuit.

RESPONSE:


18.    All correspondence to or from the adjusting company and/or the insurance company that issued the policy regarding modifying/modifications to the unit price cost and the price list You used in handling Plaintiffs' claim.

RESPONSE:


64

19.     If a claim for business interruption, loss of income and/or business loss is asserted, all documents used to instruct, advise, guide, inform, educate, or assist provided to any person or defendant(s) in calculating and/or evaluating business interruption, loss of income and/or business loss damages covered under Plaintiffs' policy. This request is limited to the last 3 years.

RESPONSE:

20.     If a claim for business interruption, loss of income and/or business loss is asserted, all documents used to instruct, advise, guide, inform, educate, or assist provided to any person or defendant(s) in calculating and/or evaluating any extra expenses incurred during the period of business interruption, loss of income and/or business loss covered under Plaintiff's policy. This request is limited to the last 3 years.

RESPONSE:

21.     If a claim for business interruption, loss of income and/or business loss is asserted, all documents prepared by any third party used to evaluate Plaintiffs' claim(s) in the last 3 years regarding, in any way, the investigation of business interruption, loss of income and/or business loss claims.

RESPONSE:

# CIVIL CASE INFORMATION SHEET

CAUSE NUMBER *(FOR CLERK USE ONLY):* _____   COURT *(FOR CLERK USE ONLY):* _____

STYLED A.V Technical Support, Inc. v. Acadia Insurance Grp, South Texas Claims & Appraisal Service, Inc. Mark Massey, James Amato and Janet Parker
*(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)*

A civil case information sheet must be completed and submitted when an original petition or application is filed to initiate a new civil, family law, probate, or mental health case or when a post-judgment petition for modification or motion for enforcement is filed in a family law case. The information should be the best available at the time of filing.

## 1. Contact information for person completing case information sheet:

Name: Andrew A. Woellner
Email: awoellner@potts-law.com
Address: 3737 Buffalo Speedway, Ste. 1900
Telephone: (713) 961-8881
City/State/Zip: Houston, TX 77098
Fax:
Signature:
State Bar No.: 24060850

### Names of parties in case:

Plaintiff(s)/Petitioner(s): AV Technical Support, Inc.

Defendant(s)/Respondent(s): Acadia Insurance Corp, South Texas Claims & Appraisal Service, Inc., Mark Massey, James Amato and Janet Parker

[Attach additional page as necessary to list all parties]

### Person or entity completing sheet is:
- [x] Attorney for Plaintiff/Petitioner
- [ ] Pro Se Plaintiff/Petitioner
- [ ] Title IV-D Agency
- [ ] Other:

Additional Parties in Child Support Case:
Custodial Parent:
Non-Custodial Parent:
Presumed Father:

## 2. Indicate case type, or identify the most important issue in the case (select only 1):

### Civil

**Contract**
*Debt/Contract*
- [ ] Consumer/DTPA
- [ ] Debt/Contract
- [ ] Fraud/Misrepresentation
- [ ] Other Debt/Contract:

*Foreclosure*
- [ ] Home Equity—Expedited
- [ ] Other Foreclosure
- [ ] Franchise
- [x] Insurance
- [ ] Landlord/Tenant
- [ ] Non-Competition
- [ ] Partnership
- [ ] Other Contract:

**Injury or Damage**
- [ ] Assault/Battery
- [ ] Construction
- [ ] Defamation
*Malpractice*
- [ ] Accounting
- [ ] Legal
- [ ] Medical
- [ ] Other Professional Liability:
- [ ] Motor Vehicle Accident
- [ ] Premises
*Product Liability*
- [ ] Asbestos/Silica
- [ ] Other Product Liability List Product:
- [ ] Other Injury or Damage:

**Real Property**
- [ ] Eminent Domain/ Condemnation
- [ ] Partition
- [ ] Quiet Title
- [ ] Trespass to Try Title
- [ ] Other Property:

**Related to Criminal Matters**
- [ ] Expunction
- [ ] Judgment Nisi
- [ ] Non-Disclosure
- [ ] Seizure/Forfeiture
- [ ] Writ of Habeas Corpus— Pre-indictment
- [ ] Other:

**Employment**
- [ ] Discrimination
- [ ] Retaliation
- [ ] Termination
- [ ] Workers' Compensation
- [ ] Other Employment:

**Other Civil**
- [ ] Administrative Appeal
- [ ] Antitrust/Unfair Competition
- [ ] Code Violations
- [ ] Foreign Judgment
- [ ] Intellectual Property
- [ ] Lawyer Discipline
- [ ] Perpetuate Testimony
- [ ] Securities/Stock
- [ ] Tortious Interference
- [ ] Other:

### Family Law

**Marriage Relationship**
- [ ] Annulment
- [ ] Declare Marriage Void
*Divorce*
- [ ] With Children
- [ ] No Children

**Other Family Law**
- [ ] Enforce Foreign Judgment
- [ ] Habeas Corpus
- [ ] Name Change
- [ ] Protective Order
- [ ] Removal of Disabilities of Minority
- [ ] Other:

**Post-judgment Actions (non-Title IV-D)**
- [ ] Enforcement
- [ ] Modification—Custody
- [ ] Modification—Other

**Title IV-D**
- [ ] Enforcement/Modification
- [ ] Paternity
- [ ] Reciprocals (UIFSA)
- [ ] Support Order

**Parent-Child Relationship**
- [ ] Adoption/Adoption with Termination
- [ ] Child Protection
- [ ] Child Support
- [ ] Custody or Visitation
- [ ] Gestational Parenting
- [ ] Grandparent Access
- [ ] Parentage/Paternity
- [ ] Termination of Parental Rights
- [ ] Other Parent-Child:

**Tax**
- [ ] Tax Appraisal
- [ ] Tax Delinquency
- [ ] Other Tax

### Probate & Mental Health
*Probate/Wills/Intestate Administration*
- [ ] Dependent Administration
- [ ] Independent Administration
- [ ] Other Estate Proceedings
- [ ] Guardianship—Adult
- [ ] Guardianship—Minor
- [ ] Mental Health
- [ ] Other:

## 3. Indicate procedure or remedy, if applicable (may select more than 1):
- [ ] Appeal from Municipal or Justice Court
- [ ] Arbitration-related
- [ ] Attachment
- [ ] Bill of Review
- [ ] Certiorari
- [ ] Class Action
- [ ] Declaratory Judgment
- [ ] Garnishment
- [ ] Interpleader
- [ ] License
- [ ] Mandamus
- [ ] Post-judgment
- [ ] Prejudgment Remedy
- [ ] Protective Order
- [ ] Receiver
- [ ] Sequestration
- [ ] Temporary Restraining Order/Injunction
- [ ] Turnover

## 4. Indicate damages sought (do not select if it is a family law case):
- [ ] Less than $100,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees
- [ ] Less than $100,000 and non-monetary relief
- [ ] Over $100,000 but not more than $200,000
- [ ] Over $200,000 but not more than $1,000,000
- [x] Over $1,000,000

Rev 2/13



Cause Number: _____

District Court : _____

## Donna Kay M<sup>c</sup>Kinney
## Bexar County District Clerk

## <u>Request for Process</u>

Style: AV Technical Support, Inc. _____  Vs. Acadia Ins. Corp, South TX Claims & Appraisal Serv., Inc., Mark Massey, James Amato and Janet Parker

Request the following process: (Please check all that Apply)

■ Citation ☐ Notice ☐ Temporary Restraining Order ☐ Notice of Application for Protective Order
☐ Temporary Protective Order ☐ Precept with hearing ☐ Precept with*out* a hearing ☐ Writ of Attachment
☐ Writ of Habeas Corpus ☐ Writ of Garnishment ☐ Writ of Sequestration ☐ Capias ☐ Other: _____

**1.**

Name: Acadia Insurance Company

Registered Agent/By Serving: CT Corporation System

Address 1999 Bryan St., Ste. 900, Dallas, TX 75201-4284

Service Type: (Check One) ☐*Private Process*  ☐*Sheriff*  ☐*Commissioner of Insurance*  ☐*SA Express News*  ☐*Hart Beat* ☐*Courthouse Door*
■*Certified Mail*  ☐*Registered Mail*  ☐*Out of County*  ☐*Secretary of State*  ☐*Constable Pct__*
*(Pct. 3 serves process countywide)*

**2.**

Name: Sourth Texas Claims & Appraisal Service, Inc.

Registered Agent/By Serving: Lee T. Massey

Address 4407 Walzem Road, Ste. 101, San Antonio, TX 78218

Service Type: (Check One) ■*Private Process*  ☐*Sheriff*  ☐*Commissioner of Insurance*  ☐*SA Express News*  ☐*Hart Beat* ☐*Courthouse Door*
☐*Certified Mail*  ☐*Registered Mail*  ☐*Out of County*  ☐*Secretary of State*  ☐*Constable Pct__*
*(Pct. 3 serves process countywide)*

**3.**

Name: Mark Massey

Registered Agent/By Serving: _____

Address 709 Taylor Drive, Adkins, TX 78101

Service Type: (Check One) ■*Private Process*  ☐*Sheriff*  ☐*Commissioner of Insurance*  ☐*SA Express News*  ☐*Hart Beat* ☐*CourthouseDoor*
☐*Certified Mail*  ☐*Registered Mail*  ☐*Out of County*  ☐*Secretary of State*  ☐*Constable Pct__*
*(Pct. 3 serves process countywide)*

**4.**

Name: James Amato

Registered Agent/By Serving: _____

Address 1917 Springbranch Drive, Arlington, TX 76006-6613

Service Type: (Check One) ■*Private Process*  ☐*Sheriff*  ☐*Commissioner of Insurance*  ☐*SA Express News*  ☐*Hart Beat* ☐*Courthouse Door*
☐*Certified Mail*  ☐*Registered Mail*  ☐*Out of County*  ☐*Secretary of State*  ☐*Constable Pct__*
*(Pct. 3 serves process countywide)*

Title of Document/Pleading to be Attached to Process: Plaintiff's Original Petition

Name of Attorney/Pro se: Andrew A. Woellner _____  Bar Number: 24060850

Address: 3737 Buffalo Speedway, Ste 1900 _____  Phone Number: (713) 963-8881
Houston, TX 77098

Attorney for Plaintiff XX _____ Defendant _____ Other _____

***\*\*\*\*IF SERVICE IS NOT PICKED UP WITHIN 14 BUSINESS DAYS, SERVICE WILL BE DESTROYED\*\*\*\****



Cause Number: _____

District Court : _____

## Donna Kay M<sup>c</sup>Kinney
## Bexar County District Clerk

## <u>Request for Process</u>

Style: AV Technical Support, Inc. _____   Vs. Acadia Ins. Grp, South TX Claims & Appraisal Serv. Inc., Mark Massey, James Amato and Janet Parker

Request the following process: (Please check all that Apply)

☑ Citation ☐ Notice ☐ Temporary Restraining Order ☐ Notice of Application for Protective Order
☐ Temporary Protective Order ☐ Precept with hearing ☐ Precept *without* a hearing ☐ Writ of Attachment
☐ Writ of Habeas Corpus ☐ Writ of Garnishment ☐ Writ of Sequestration ☐ Capias ☐ Other: _____

**1.**
**Name:** Janet K. Parker

**Registered Agent/By Serving:** _____

**Address** 6300 Vernedale Road, Charlotte, NC 28212-2122

**Service Type:** (Check One) ☑ *Private Process*  ☐ *Sheriff*  ☐ *Commissioner of Insurance*  ☐ *SA Express News*  ☐ *Hart Beat* ☐ *Courthouse Door*
☐ *Certified Mail*  ☐ *Registered Mail*  ☐ *Out of County*  ☐ *Secretary of State*  ☐ *Constable Pct* ___
(*Pct. 3 serves process countywide*)

**2.**
**Name:** _____

**Registered Agent/By Serving:** _____

**Address** _____

**Service Type:** (Check One) ☐ *Private Process*  ☐ *Sheriff*  ☐ *Commissioner of Insurance*  ☐ *SA Express News*  ☐ *Hart Beat* ☐ *Courthouse Door*
☐ *Certified Mail*  ☐ *Registered Mail*  ☐ *Out of County*  ☐ *Secretary of State*  ☐ *Constable Pct* ___
(*Pct. 3 serves process countywide*)

**3.**
**Name:** _____

**Registered Agent/By Serving:** _____

**Address** _____

**Service Type:** (Check One) ☐ *Private Process*  ☐ *Sheriff*  ☐ *Commissioner of Insurance*  ☐ *SA Express News*  ☐ *Hart Beat* ☐ *Courthouse Door*
☐ *Certified Mail*  ☐ *Registered Mail*  ☐ *Out of County*  ☐ *Secretary of State*  ☐ *Constable Pct* ___
(*Pct. 3 serves process countywide*)

**4.**
**Name:** _____

**Registered Agent/By Serving:** _____

**Address** _____

**Service Type:** (Check One) ☐ *Private Process*  ☐ *Sheriff*  ☐ *Commissioner of Insurance*  ☐ *SA Express News*  ☐ *Hart Beat* ☐ *Courthouse Door*
☐ *Certified Mail*  ☐ *Registered Mail*  ☐ *Out of County*  ☐ *Secretary of State*  ☐ *Constable Pct* ___
(*Pct. 3 serves process countywide*)

**Title of Document/Pleading to be Attached to Process:** Plaintiff's Original Petition

**Name of Attorney/Pro se:** Andrew A. Woellner _____   **Bar Number:** 24060850

**Address:** 3737 Buffalo Speedway, Ste. 1900 _____   **Phone Number:** (713) 963-8881

Houston, TX 77098

**Attorney for Plaintiff** XX _____   **Defendant** _____   **Other** _____

***\*\*\*\*IF SERVICE IS NOT PICKED UP WITHIN 14 BUSINESS DAYS, SERVICE WILL BE DESTROYED\*\*\*\****